Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| JUAN L. ROSADO PARRILLA<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | TA2026RA00014 | *Revisión Administrativa* procedente del Departamento de Corrección y Rehabilitación, Oficina de Clasificación de Confinados<br><br>Caso núm.: NEPR-QR-2025-0229<br><br>Sobre: Custodia |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 23 de abril de 2026.

Comparece la parte recurrente, Juan L. Rosado Parrilla (Rosado Parrilla o recurrente) y solicita que revoquemos la *Resolución* emitida por el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación (Comité, CCT o parte recurrida) el 6 de noviembre de 2025, notificada al recurrente en esa misma fecha. En el aludido dictamen, el Comité ratificó la clasificación de custodia mediana del recurrente.

El 11 de febrero de 2026, la parte recurrida, Departamento de Corrección y Rehabilitación (Departamento, DCR o recurrida), presentó su *Escrito en Cumplimiento de Resolución.*

Evaluados los escritos presentados por las partes, se confirma el dictamen recurrido.

### I. Trasfondo fáctico y procesal

En su recurso, Rosado Parrilla indicó que se encuentra bajo la custodia del DCR y actualmente cumple la sentencia impuesta el 28 de noviembre de 2011 por el Tribunal de Primera Instancia, Sala

Superior de Mayagüez. También expuso que está matriculado en el Instituto de Bellas Artes y Estudios Universitarios 308 (IBAEU), el cual es un programa especial para confinados de buen ajuste institucional.

Alegó que, el 6 de noviembre de 2025, el Comité evaluó su caso para clasificación de custodia y determinó ratificar el nivel de custodia actual (custodia mediana). Conforme surge de la *Resolución* emitida y entregada al recurrente ese mismo día, el Comité emitió 37 determinaciones de hecho. De estas, transcribimos a continuación las pertinentes a la controversia ante nos:

> 5. El 30 de junio de 2011 el Tribunal de Primera Instancia Sala Superior de Mayagüez expide Auto de Prisi[ó]n Provisional por los delitos de Tentativa Robo (3er grado), Daños, Art. 50.4 Ley Armas (2 casos) y Art. 5.15 Ley Armas (2 casos) cometidos el 3 de octubre de 2008 en Mayagüez. Sin derecho a fianza. Es ingresado a prisión.

> 6. El 8 de julio de 2011 el Tribunal de Primera Instancia Sala de Fajardo expide Auto de Prisi[ó]n Provisional por el delito de Robo cometido el 27 de mayo de 2011 en R[í]o Grande. Con una fianza de $20,000.00 dólares.

> 7. El 11 de julio de 2011 el Tribunal de Primera Instancia Centro Judicial de Fajardo celebró la vista final de Revocación de Probatoria y lo sentencia de los delitos de Robo Recl. Apropiación Ilegal Agravada a 1 año, Art. 5.15 Recl. Art. 5.04 Ley de Armas a 1 año, Art. 5.10 Recl. Art. 5.04 Ley Armas a 1 año. A ser cumplidos consecutivos entre sí. Se ordena el abono del t[é]rmino de 1 año y 3 meses cumplidos favorablemente en probatoria, así como cualquier t[é]rmino que haya cumplido en preventiva.

> 8. El 8 de agosto de 2011 el Comité de Clasificación y Tratamiento acordó clasificar inicialmente en custodia Mediana por encontrarse cumpliendo una probatoria **e incurre en nuevos casos de la misma naturaleza.**

> 9. El 28 de noviembre de 2011 el Tribunal de Primera Instancia Sala Superior de Mayagüez lo sentencia por los delitos de Art. 5.04 Ley Armas con Agravantes (2 casos) a 20 años de cárcel + 20 años de cárcel para un total de 40 años de cárcel en cada caso, Pena duplicada a tenor con el art[í]culo 7.03 Ley de Armas por Solicitud de Agravantes. Por Art. 5.15 Ley Armas con Agravantes (2 casos) a 10 años de cárcel + 10 años de cárcel para un total de 20 años de cárcel en cada caso, pena duplicada a tenor con el Art. 70.3 Ley de Armas por Solicitud de Agravantes, por Tentativa Robo (3er grado) a 4 años de cárcel y por Daños a 30 d[í]as de cárcel.

**10. El 29 de noviembre de 2011 el Comité de Clasificación y Tratamiento acordó clasificar su custodia de Mediana a Máxima por recibirse sentencia elevada.**

11. El 2 de diciembre de 2011 le radican querella disciplinaria #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 por Posesión, distribución, uso o venta de teléfonos celulares o su tentativa Código 109 y el 26 de enero de 2012 se le celebr[ó] la vista disciplinaria saliendo incurso con la sanción impuesta de P[é]rdida de privilegio de Visita por 60 días.

[...]

13. El 4 de abril de 2012 le radican querella disciplinaria #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 por Posesión, distribución, uso o venta de teléfonos celulares o su tentativa Código 109 y el 17 de mayo de 2012 se le celebr[ó] la vista disciplinaria saliendo incurso con la sanción impuesta de P[é]rdida de privilegio de Visita por 60 días.

[...]

16. El 14 de noviembre de 0212 el Comité de Clasificación y Tratamiento acordó ratificar su custodia Máxima la cual tuvo hasta el 30 de agosto de 2022.

17. El 25 de febrero de 2015 complet[ó] el Curso de Bellas Artes con 264 horas contacto.

[...]

19. El 11 de abril de 2019 le radican querella disciplinaria #217-19-060 por Posesión de tel[é]fono celular o su tentativa Código 19 y el 22 de mayo de 2019 se le celebr[ó] la vista disciplinaria saliendo incurso con la sanción impuesta de Suspensión de 30 días de Visita.

20. El 21 de agosto de 2019 el Instituto de Ciencias Forense le realiza prueba de dopaje arrojando negativo.

[...]

**24. El 30 de agosto de 2022 el Comité de Clasificación y Tratamiento acordó reclasificar su custodia de Máxima a Mediana la cual tiene hasta el presente.**

[...]

34. Se encuentra integrado al Programa de Teatro Correccional y Taller de Artesanía.

35. Se encuentra rindiendo labores en Mejoras Permanentes y Áreas Verdes.

36. Cumple una sentencia total de 128 años 3 meses y 1 día.

37. El mínimo de su sentencia est[á] tentativamente para el 28 de enero de 2027 y el máximo est[á] tentativamente para el 21 de octubre de 2119.

En sus conclusiones de derecho, el Comité determinó ratificar el nivel de custodia mediana. Lo anterior, basado en la siguiente conclusión:

Cumple sentencia por delitos contra la propiedad e integridad corporal. La severidad, naturaleza de los delitos y el tiempo proyectado en confinamiento en comparación al que ha cumplido son determinantes en el grado de supervisión y seguridad que este caso amerita. **El confinado debe permanecer por un período más prolongado bajo medidas de mediana seguridad para observar los ajustes institucionales necesarios que nos permitan recomendar un nivel de custodia de menor restricción** y para que continúe beneficiándose al máximo de los programas y servicios ofrecidos en su custodia actual.

Inconforme con la determinación, el 25 de noviembre de 2025, el recurrente presentó una solicitud de reconsideración, en la que planteó que el Comité erró al solo considerar el elemento de la gravedad del delito y extensión de la sentencia. En ese sentido, afirmó que dichos elementos nunca cambian por lo que no deberían tener mayor peso sobre el ajuste institucional y el progreso logrado por éste.

El 10 de diciembre de 2025, Rosado Parrilla recibió notificación por escrito de que **no** se acogió la reconsideración. En dicha determinación, el DCR expresó, en lo aquí pertinente, lo siguiente:

De la documentación presentada se desprende que el 11 de julio de 2011, comenzó a extinguir sentencia de 128 años, 3 meses y 19 días en prisión por los delitos de Apropiación Ilegal Agravada, Artículo 5.04 con Agravantes y 5.15 de Ley de Armas con Agravantes, Tentativa de Robo, Apropiación Ilegal Agravada en 4to grado y por último por Artículo 2 de la Ley 15 cometido en prisión sentenciado en septiembre de 2012. **Posee el mínimo de sentencia para el 28 de enero 2027 y el máximo se prevé para el 21 de octubre de 2119, dentro de 94 años tentativamente.**

Al aplicar la Escala de Reclasificación (Casos Sentenciados), arroja una puntuación de (1) lo que recomienda un nivel de custodia mínima, cuando obtienes una puntuación de 5 o menos en re[n]glones 1-8. Se le aplica la <u>Modificación Discrecional para un nivel de custodia más alto</u> "Gravedad del Delito" lo que implica conforme al Manual para la Clasificación de Confinados, que: la puntuación subestima la gravedad del delito. *El personal debe documentar las características del delito que aparecen en la declaración*

*de los hechos que se están utilizando como fundamento para la decisión de la modificación.* De la versión del delito se desprende que el confinado fue a asaltar un negocio en el municipio de Río Grande con unos amigos, que mientras él, le apuntaba con un arma de fuego al hijo del dueño del negocio, los demás recogían el dinero y artículos del lugar. Fue arrestado y le otorgaron una probatoria y estando en el privilegio, cometió robo de dos cadenas a una muchacha en el Municipio de Fajardo y en el Municipio de Mayagüez asaltaron una joyería entre otros robos". **Estos hechos denotan un problema de impulsividad y falta de autocontrol y tendencia a actuar sin mediar consecuencias. El habituarse a amenazar intimidar y requerir gratificación inmediata requiere de cambios conductuales significativos lo que justifica el uso de la modificación discrecional recurrida. De otra parte, durante su confinamiento ha sido objeto de acciones disciplinarias e inclusive fue sentenciado por delitos cometidos en prisión.** El hecho de que permanezca en moderadas restricciones de seguridad no incide en su proceso de rehabilitación, considerando que le restan por cumplir 94 años tentativamente y su custodia no ha sido obstáculo para participar de los programas y servicios existentes en el instituto incluyendo de salidas extra institucionales.

Se concurre con la determinación del Comité de Clasificación y Tratamiento en cuanto a custodia se refiere.

Aún inconforme, Rosado Parrilla acude ante este foro intermedio y formula los siguientes señalamientos de error:

ERRÓ EL DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN EN DENEGAR LA RECLASIFICACIÓN A CUSTODIA MÍNIMA, ÚNICAMENTE BASÁNDOSE EN ELEMENTOS DE LA GRAVEDAD DEL DELITO Y SENTENCIA QUE EXTINGUE, INGNORANDO LA CONDUCTA Y AJUSTE ACTUAL DEL RECURRENTE.

En síntesis, Rosado Parrilla plantea que el DCR erró al ratificar su custodia mediana basado en la modificación discrecional del criterio de *gravedad del delito* por encima de su conducta y ajuste institucional actual. Junto a su recurso acompañó prueba de los talleres, certificados de participación y reconocimientos recibidos.

Por su parte, el DCR sostiene que el criterio de gravedad del delito fue aplicado correctamente, por lo que la decisión de la agencia constituye una decisión razonable y procede confirmar la determinación recurrida.

## II. Exposición del Derecho

### A. Revisión judicial de decisiones administrativas

Es doctrina reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial.[1] Ello, en vista al gran conocimiento especializado y experiencia que las agencias ostentan.[2] Esta deferencia se debe a que son estos los que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados.[3]

Así pues, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[4] El criterio rector para la revisión de este tipo de determinación es el de razonabilidad, esto es, si la actuación de la agencia fue ilegal, arbitraria, o tan irrazonable que constituye un abuso de discreción.[5]

La revisión usualmente comprende las siguientes áreas: (1) si se concedió el remedio apropiado; (2) si las determinaciones de hechos son conformes al principio de evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho son correctas.[6]

En el contexto de las determinaciones administrativas sobre el nivel de custodia, el Tribunal Supremo ha opinado que, "[a]l momento de determinarse la procedencia de un cambio en el nivel de custodia, deberá considerarse una serie de factores subjetivos y

---

[1] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *OSC v. CODEPOLA*, 202 DPR 842, 853 (2019).

[2] *OCS v. Universal*, 187 DPR 164, 178 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

[3] *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); The *Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012); *Accumail P.R. v. Junta Sub. A.A.A.*, 170 DPR 821, 829 (2007); *Mun. San Juan v. Plaza Las Américas*, 169 DPR 310, 324 (2006); *Otero v. Toyota*, 163 DPR 716, 727 (2005); *Rebollo v. Yiyi Motors*, 161 DPR 69 (2004).

[4] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

[5] *Íd.*, pág. 216; *Transp. Sonell v. Jta. Subastas ACT*, 214 DPR ___ (2024), 2024 TSPR 82 (opinión del 24 de julio de 2024).

[6] *Moreno Lorenzo y otros v. Depto. Fam.*, supra, págs. 839-840; *Asoc. Fcias. v. Caribe Specialty, et al. II*, 179 DPR 923, 940 (2009).

objetivos, para cuya atención se requiere la pericia del [Departamento de Corrección y Rehabilitación]".[7] También ha expresado que:

> Según el Manual, es al Comité de cada institución carcelaria a quien corresponde realizar la evaluación periódica correspondiente al nivel de custodia asignado a los confinados. (...)

Por lo general, la composición de estos comités la conforman peritos en el campo tales como técnicos sociopenales y oficiales o consejeros correccionales. Estos profesionales cuentan con la capacidad, la preparación, el conocimiento y la experiencia necesarios para atender las necesidades de los confinados y realizar este tipo de evaluaciones. Por esta razón, una determinación formulada por el referido Comité debe ser sostenida por el foro judicial siempre que no sea arbitraria, caprichosa y esté fundamentada en evidencia sustancial. Es decir, siempre que la decisión sea razonable, cumpla con el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta, el tribunal deberá confirmarla.[8]

B. **Plan de Reorganización Núm. 2-2011[9] y el Manual para la Clasificación de los Confinados (Reglamento Núm. 9151)**

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, dispone que será política pública del Estado reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva, y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social.[10]

---

[7] *Cruz v. Administración*, 164 DPR 341, 352 (2005).
[8] *Íd.,* págs. 354-355.
[9] Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA Ap. XVIII.
[10] *López Borges v. Adm. Corrección*, 185 DPR 603, 619 (2012).

Cónsono con ello, el Art. 10 del Plan de Reorganización Núm. 2-2011[11], estatuye que "[l]a población correccional será sometida a evaluaciones periódicas con el propósito de conocer y analizar su situación social, física, emocional y mental, historial delictivo e identificar sus capacidades, intereses, motivaciones, controles y limitaciones, a los fines de clasificarlos y determinar el plan de acción a tomar en cada caso, en armonía con los principios de tratamiento individualizado y seguridad pública enmarcados en los propósitos de este Plan".[12]

A tales fines, el Departamento aprobó el *Manual para la Clasificación de los Confinados*, Reglamento Núm. 9151, del 22 de enero de 2020, efectivo a partir del 20 de febrero de 2020. El propósito de la reglamentación es establecer un sistema organizado para ingresar, procesar y asignar a los confinados a instituciones y programas del Departamento.[13]

Como parte de la política de la agencia, se encuentra la clasificación "de acuerdo con el nivel de custodia restrictiva más bajo que se requiera, la asignación de vivienda y la participación de los confinados en programas de trabajo y educación, adiestramiento vocacional y recreación que sean apropiados para ellos".[14] Precisamente, el Tribunal Supremo ha explicado que "la importancia de la reducción del nivel de custodia, como parte del proceso de rehabilitación, se refleja en la regla que enuncia constantemente el [Reglamento Núm. 9151][15]: se tiene que ubicar a cada confinado en el nivel de custodia menos restrictivo posible".[16]

---

[11] Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA Ap. XVIII.
[12] *Íd.*
[13] Art. II del Reglamento Núm. 9151.
[14] Art. III (1) del Reglamento Núm. 9151.
[15] A pesar de que la citada opinión cita el *Manual de Clasificación* de 2000, los principios invocados permanecieron inalterados en la versión del 2020. Perspectiva General (I) del Reglamento Núm. 9151.
[16] *López Borges v. Adm. Corrección,* supra, pág. 608.

De otro lado, el Artículo IV, Sección 1, del Reglamento Núm. 9151 establece que el Comité de Clasificación y Tratamiento es el responsable de evaluar las necesidades de seguridad y de los programas de los confinados sentenciados. El Comité tiene a su cargo la evaluación de los confinados, en lo concerniente a sus necesidades, aptitudes, intereses, limitaciones y funcionamiento social.[17] Sus objetivos primordiales son la rehabilitación, la asignación de custodia y la seguridad pública.[18]

El sistema consta de una clasificación inicial del confinado, seguida de un proceso de reclasificación[19] periódica de cada reo. En lo atinente, una clasificación objetiva se refiere al "proceso confiable y válido mediante el cual se clasifica a los confinados y se les subdivide en grupos, basándose en varias consideraciones, entre las que se incluyen: la severidad del delito, su historial de delitos anteriores, su comportamiento en las instituciones, los requisitos de seguridad y supervisión y las necesidades identificables de programas y servicios específicos".[20] La reglamentación establece, además, que la reclasificación de confinados es el procedimiento para la revisión de la asignación del nivel actual de custodia de cada confinado, con el fin de determinar cuán apropiada es ésta.[21] Al exponer los objetivos perseguidos por dicho sistema, el Reglamento Núm. 9151 dispone el uso del formulario *Escala de Reclasificación de Custodia (Casos Sentenciados)*, reproducido en el Apéndice K, del cuerpo reglamentario, y aclara que:

> [...] La reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.

---

[17] Art. IV, Sec. 2 (IV) del Reglamento Núm. 9151.

[18] Art. IV, Sec. 2 (IV)(A) del Reglamento Núm. 9151.

[19] El Reglamento Núm. 9151 define la reclasificación como la "[r]evisión periódica de los confinados en lo que respecta a su progreso como parte del Plan Institucional, así como también a su categoría de custodia". Art. IV, Sec. 1 del Reglamento Núm. 9151.

[20] Art. IV, Sec. 1 del Reglamento Núm. 9151.

[21] Art. IV, Sec. 7 (I) del Reglamento Núm. 9151.

La reevaluación de custodia se parece a la evaluación inicial de custodia, pero recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. Es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución.[22]

La segunda sección de la *Escala de Reclasificación de Custodia*, denominada *Evaluación de Custodia*, detalla el proceso para revisar y actualizar la evaluación inicial del confinado. La sección contiene la escala de reclasificación de custodia para los casos de confinados sentenciados y enumera ocho criterios para realizar la correspondiente evaluación. Estos son: (1) la gravedad de los cargos y sentencias actuales; (2) el historial de delitos graves previos; (3) el historial de fuga o tentativas de fuga; (4) el número de acciones disciplinarias; (5) las acciones disciplinarias serias; (6) las sentencias anteriores por delitos graves como adultos; (7) la participación en programas; y, (8) la edad actual del miembro de la población correccional.[23]

Una vez completados los ocho renglones de la *Evaluación de Custodia* en la *Escala de Reclasificación de Custodia*, a base del resultado que se obtenga, se recomienda un nivel de custodia, que puede variar entre máxima, mediana o mínima. El nivel de custodia según la escala es el siguiente: 5 puntos o menos, corresponde a una custodia mínima; 5 puntos o menos si el confinado tiene una orden de arresto o detención, corresponde a una custodia mediana; 6 a 10 puntos, corresponde a una custodia mediana; 7 puntos o más en los renglones 1 al 3, corresponde a una custodia máxima; y, 11 puntos o más en los renglones 1 al 8, corresponde a una custodia máxima.[24]

---

[22] Art. IV, Sec. 7 (II) del Reglamento Núm. 9151.
[23] Apéndice K, Sec. II, del Reglamento Núm. 9151.
[24] Apéndice K, Sec. III, del Reglamento Núm. 9151.

También, el Manual de Clasificación establece unas consideraciones especiales de manejo, las cuales versan sobre los asuntos de administración que merecen atención y posible intervención del personal en términos de vivienda o supervisión especial.[25]

La tercera sección de la *Escala de Reclasificación de Custodia* establece unos criterios adicionales, tanto discrecionales como no discrecionales. Una modificación discrecional se refiere al "conjunto de factores específicos de clasificación que el personal puede usar para modificar la puntuación de clasificación de un confinado, pero solamente con la aprobación del supervisor de clasificación."[26]

La reglamentación establece unas **modificaciones discrecionales para un nivel de custodia más alto**. Estas son: **(1) la gravedad del delito;** (2) el historial de violencia excesiva; (3) la afiliación con gangas; (4) la dificultad en el manejo del confinado; (5) los grados de reincidencia; (6) el riesgo de fuga; (7) el comportamiento sexual agresivo; (8) los trastornos mentales o desajustes emocionales; (9) si representa una amenaza o peligro; (10) la desobediencia de las normas o rehusarse al plan de tratamiento; y, (11) el reingreso por violación de normas.[27]

No obstante, "toda modificación discrecional deberá estar **basada en documentación escrita** que evidencia ajustes adecuados y que se ha beneficiado de los programas de tratamientos requeridos, **proveniente de informes disciplinarios**, informes de querellas, informes de libros de novedades, documentos del

---

[25] Los factores de administración son los siguientes: custodia protectiva (para garantizar su seguridad y bienestar); joven adulto (menor de 21 años); psiquiátricas; sesenta años o más de edad; riesgo de suicidio; problemas médicos; impedimentos físicos, y cualquier otra consideración de manejo relacionados con requisitos de vivienda o de supervisión especiales. Apéndice K, Sec. III (B) del Reglamento Núm. 9151.

[26] Art. IV, Sec. 1 del Reglamento Núm. 9151.

[27] Apéndice K, Sec. III (D) del Reglamento Núm. 9151. (Énfasis nuestro).

expediente criminal o social, y cualquier otra información o documento que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional".[28]

## II.    Aplicación del Derecho a los Hechos

En su recurso, Rosado Parrilla aduce que el Comité de Clasificación abusó de su discreción al aplicar la modificación discrecional de *gravedad del delito* y que dicho criterio haya tenido mayor peso que el progreso y ajuste institucional actual que ha mantenido. Sostiene que el Comité erró al apoyarse solamente en dicho factor para ratificar la clasificación de custodia mediana. Entiende que, al aplicarse dicha modificación discrecional, la actuación del Comité fue arbitraria y caprichosa. No tiene razón.

El Apéndice K, Sec. III (D) del Reglamento Núm. 9151 define la mencionada modificación discrecional de la siguiente forma:

> Gravedad del delito: La puntuación subestima la gravedad del delito. El personal debe documentar las características del delito que aparecen en la declaración de los hechos que se están utilizando como fundamento para la decisión de la modificación. (...)

Conforme expusimos anteriormente, el propósito de la evaluación de clasificación de custodia es verificar la adaptación del confinado y prestar atención a cualquier situación que pueda surgir. La evaluación periódica no necesariamente tiene como resultado un cambio en la clasificación de custodia. En el balance de intereses que conlleva tal determinación, el Comité de Clasificación tiene que ponderar criterios subjetivos y objetivos para asegurar la seguridad de la institución y la rehabilitación del confinado.

Aun cuando previo a la imposición de la modificación discrecional de gravedad del delito en su evaluación, Rosado Parrilla obtuvo una puntuación que equivale al nivel de custodia mínima, dicho resultado no es el único criterio que utiliza el Comité de

---

[28] Apéndice K, Sec. III (D) del Reglamento Núm. 9151.

Clasificación para analizar y recomendar el nivel de custodia apropiado para el confinado. Al hacer su determinación sobre reclasificación, el Comité no está obligado a considerar de forma aislada, la puntuación alcanzada como resultado de dicha evaluación y obviar las demás circunstancias o criterios que aplican al caso del confinado.

En el presente caso, el Comité aplicó la modificación discrecional de *gravedad del delito*, la cual aplicó luego de evaluar la totalidad del expediente, y en esta detalló las características del delito como fundamento de su determinación de aplicar la referida modificación discrecional, conforme establece el Apéndice K, Sec. III (D) del Reglamento Núm. 9151. Habida cuenta de lo anterior, la determinación emitida resulta razonable y sostenida por la evidencia que obra en el expediente del recurrente y la misma no resulta arbitraria ni caprichosa. No incidió el Comité al ratificar la custodia de Rosado Parrilla.

Por otro lado, resaltamos que, en su conclusión, el Comité expresó que Rosado Parrilla debía permanecer en custodia mediana por un periodo más prolongado para observar los ajustes institucionales necesarios que le permitan al Comité recomendar un nivel de custodia de menor restricción. En virtud de lo anterior, Rosado Parrilla tiene la oportunidad de continuar beneficiándose de los programas y talleres en que actualmente participa, lo cual le permitirá dar continuidad a su ajuste institucional y progreso en curso, con el fin de que eventualmente pueda ser recomendado para un nivel de custodia menor.

Por lo anterior, concluimos que la determinación del Comité se basó en el expediente administrativo y constituyó una actuación razonable de la agencia, por lo que merece nuestra deferencia.

**IV. Parte dispositiva**

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones